UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

                                 :

UNITED STATES OF AMERICA

                                 :

    - v. -                            S1 13 Cr. 272 (PGG)

                                 :

RUBEN ESTRADA,
      a/k/a "Mafia,"

                                 :

          Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

## GOVERNMENT'S POST-HEARING MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT RUBEN ESTRADA'S PRETRIAL MOTIONS

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

CHRISTOPHER J. DIMASE
SARAH KRISSOFF
Assistant United States Attorneys
   - Of Counsel -

<u>**PRELIMINARY STATEMENT**</u>

The Government respectfully submits this Memorandum of Law in opposition to the motions of defendant Ruben Estrada to suppress statements made by Estrada on August 29, 2012 and May 14, 2013,[1] along with his motions for a bill of particulars and Rule 16 discovery materials.  For the reasons set forth below, the defendant's suppression motions should be denied without a hearing, and his motion for a bill of particulars should likewise be denied.  The parties further request that the Court hold in abeyance the defendant's motion for discovery materials.

<u>**DEFENDANT'S MOTIONS TO SUPPRESS STATEMENTS**</u>

**A.     Background[2]**

**1.     August 27, 2012 New York State Arrest of the Defendant**

On August 27, 2012, police officers with the Dryden Police Department in Dryden, New York, arrested the defendant and others in connection with their possession of two assault rifles recovered from a vehicle parked in the Dryden Hotel parking lot.  (Ex. A to Def's Declaration in Support of Mot. to Suppress Statement of Aug. 29, 2012 (hereinafter "Aug. 29 Declaration").)  The defendant concedes that this incident was not connected in any way to the charges contained in the operative indictment, S1 13 Cr. 272 (PGG) (the "S1 Indictment").  (Aug. 29 Declaration at 1, n.1.)  Following his arrest, on August 27, 2012 at approximately 8:55 p.m., Dryden Police Officers advised Estrada of his *Miranda* rights, including his right to have a lawyer with him during any questioning; Estrada indicated that he understood those rights and that he was willing

---

[1] In the defendant's motion to suppress his statement of May 14, 2013, the defendant mistakenly refers to the date of that statement as May 14, 2012.

[2] The facts set forth herein are contained in the defense motions and attached exhibits, except where otherwise noted.

to answer questions.[3]  (*See* Dryden Police Department, Advisement of Rights – *Miranda* Warnings, attached hereto as Gov't Ex. A.)

On August 28, 2012, in Dryden Town Court, Estrada was arraigned on a criminal complaint (the "Dryden Complaint") charging him with, *inter alia*, Criminal Possession of a Weapon in the Third Degree, in violation of New York State Penal Law Section 265.02; Estrada was held on $25,000 cash bail or a $50,000 secured bond.  *(See* Town Court of Dryden Securing Order, dated August 28, 2012, attached hereto as Gov't Ex. B.)  The Dryden Town Court subsequently assigned counsel to represent Estrada in connection with the charges contained in the Dryden Complaint.[4]

### 2.   August 29, 2012 Interview of the Defendant

On August 29, 2012, at approximately 7:15 p.m., detectives with the New York City Police Department ("NYPD") conducted an interview of Estrada at the Tompkins County Sheriff's Office.  (Ex. B to Aug. 29 Declaration.)  Prior to speaking with Estrada, the detectives apprised him of his *Miranda* rights; Estrada indicated that he understood his rights and agreed to speak with the detectives.  *Id.*  (*See also* NYPD *Miranda* rights form dated August 29, 2012, attached hereto as Gov't Ex. C.)  The detectives informed Estrada that they wished to speak to him about a matter unrelated to his Dryden arrest, involving an incident in Bronx County.  *Id.* Estrada waived his *Miranda* rights and agreed to speak with the detectives.  *Id.*  After the detectives indicated that Estrada was a suspect in a homicide occurring in the vicinity of 718 East

---

[3] The facts set forth herein regarding Estrada's waiver of his *Miranda* rights on August 27, 2012 are not referenced in the defendant's motion.

[4] The Government has not yet been able to verify the exact timing of the appointment of counsel for the defendant on the Dryden Complaint.  Thus, for the purposes of this motion response, the Government accepts as accurate the defendant's assertion that he was in fact appointed counsel prior to his statements of August 29, 2012.

228th Street in the Bronx (the "Bronx Murder"), Estrada admitted that he was present at the scene but denied shooting the victim.  *Id.*  Estrada stated that he did not know the victim, and identified several other people that he said were present at the time of the shooting.  *Id.*  The detectives told Estrada that he would be brought to the Southern District of New York, where he could decide how to proceed with the assistance of an attorney.  *Id.*

### 3.      Defendant Writted to S.D.N.Y. and Returned to State Custody

On or about October 18, 2012, Estrada was writted from Tomkins County Jail to the Southern District of New York.  On or about October 19, 2012, Estrada was appointed federal counsel in connection with the investigation of the Bronx Murder, "for the purposes of negotiating with the Government."  (Mem. in Support of Def.'s Mot. to Suppress Statement of May 14, 2013 (hereinafter "May 14 Mem.") at 2.)  Having not yet been charged with a federal offense, on or about March 1, 2013, Estrada was returned to New York State custody.

### 4.      May 14, 2013 Federal Arrest of the Defendant

On May 14, 2013, Estrada was released from custody in Tompkins County.  Immediately following his release, NYPD detectives arrested Estrada on an open warrant in connection with the Bronx Murder.  Detectives then transported Estrada to the Southern District of New York, specifically, to the NYPD's 47th Precinct in the Bronx.  (Ex. A to Declaration in Support of Def.'s Mot. to Suppress Statement of May 14, 2013 (hereinafter "May 14 Declaration").)  A Special Agent ("Agent-1") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") subsequently arranged for Estrada to be brought to a location nearby the Metropolitan Correctional Center ("MCC") in Manhattan.  *Id.*  At approximately 5:55 p.m., Agent-1 met Estrada in the rear of an NYPD vehicle parked near the MCC.  *Id.*  Agent-1 informed Estrada

that he was under arrest for Bronx Murder, and advised Estrada of his *Miranda* rights; Estrada stated that he understood those rights. *Id.* Agent-1 told Estrada that he knew Estrada had an attorney and that he would not be questioning Estrada. *Id.* Estrada asked Agent-1 if there were any other charges pending, to which Agent-1 responded that the investigation was still pending and there could be more charges in the future. *Id.*

While still in the vehicle, Agent-1 obtained Estrada's pedigree information. *Id.* During a call between Agent-1 and the assigned Assistant United States Attorney ("AUSA"), Estrada asked Agent-1 to inquire as to whether there were any additional charges. *Id.* Agent-1 did so, and then communicated to Estrada that there was just the one murder charge, a serious one. *Id.*

Estrada was then driven to the MCC. Agent-1 informed Estrada that he would be lodged there overnight, and then transported the next morning to Court. *Id.* Estrada was searched at the entrance to the MCC, where detectives took custody of his belongings; Estrada asked that his personal effects be returned to his girlfriend. *Id.* Estrada was next processed by a Bureau of Prisons ("BOP") guard, who informed him that money orders could not be deposited into his BOP commissary account. *Id.* As a result, Estrada returned a money order in his possession to one of the detectives. *Id.* As BOP guards walked Estrada through a magnometer, Agent-1 informed Estrada that he might not see Estrada in the morning but would likely see him later the next day. *Id.* As Agent-1 was departing the MCC, at approximately 6:30 p.m., Estrada stated "Tell [the AUSA] that it's just a murder, and go easy on me, everything else is irrelevant." *Id.* Approximately 15 minutes had passed between this statement and Estrada's conversation with Agent-1 regarding the nature of the charges he was facing.[5] *Id.*

---

[5] While this timeframe is not set forth with specificity in the defendant's motion, Agent-1's report, attached as Exhibit A to the defendant's declaration, makes clear that a total of 35

4

The following day, May 15, 2013, the Government filed a criminal complaint charging Estrada with a single violation of Title 18, United States Code, Section 924(j), in connection with the Bronx Murder.

**B.      Applicable Law**

**1.       Right to Counsel Under the Fifth Amendment**

"Although the Fifth Amendment does not expressly guarantee any right to counsel as does the Sixth Amendment, the Supreme Court has interpreted the Fifth Amendment privilege against self-incrimination to require that, once a suspect is in custody and subject to interrogation, the police apprise the suspect of his right to contact an attorney, and to have the attorney present during questioning.  Once a suspect asserts this Fifth Amendment, or *Miranda*-based, right to counsel, the interrogation must cease until counsel is physically present during the interrogation." *Teixeria v. Greiner*, 205 F.Supp.2d 52, 56-57 (E.D.N.Y. 2002) (citing *Miranda v. Arizona*, 384 U.S. 436, 467–71 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)) (internal quotations and citations omitted); *see also United States v. Oehne*, 698 F.3d 119, 122-23 (2d Cir. 2012)).  Thus, "the right to counsel under the Fifth Amendment is no greater than the right to have the assistance and presence of counsel during custodial interrogation." *United States v. Bin Laden*, 160 F.Supp.2d 670, 680 (S.D.N.Y. 2001) (citing *Miranda*, 384 U.S. 436).

However, "not every request for counsel by a defendant is tantamount to an exercise by that defendant of his right to counsel under the Fifth Amendment." *Bin Laden*, 160 F.Supp.2d at 680 (citing *McNeil v. Wisconsin*, 501 U.S. 171 (1991)).  "For a suspect to invoke his *Miranda* right to counsel, he must at a minimum make 'some statement that can reasonably be construed

---

minutes passed between his first interaction with Estrada and Estrada's statement.  (Ex. A to May 14 Declaration.)

to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation*.'" *Oehne*, 698 F.3d 119, 122-23 (citing *McNeil v. Wisconsin*, 501 U.S. at 178) (emphasis in original); *see also United States v. Allen*, 169 F. Appx. 634, 637 (2d Cir. 2007) (the "Fifth Amendment right to counsel . . . must be made in the context of custodial interrogation"). Accordingly, a defendant does not invoke his Fifth Amendment right to counsel "merely by requesting the appointment of counsel at his arraignment on [an] unrelated charge." *McNeil v. Wisconsin*, 501 U.S. at 178-179; *see also United States v. Charley*, 396 F.3d 1074, 1078, 1082 (9th Cir. 2005) (defendant's statement at an arraignment that "she wanted to consult with a lawyer before pleading to the tribal court charges against her" not an invocation of her Fifth Amendment right to counsel); *Bin Laden*, 160 F.Supp.2d at 680 (defendant's request for an attorney in connection with "formalized court proceedings concerning [his] extradition" not an action "constitut[ing] a 'desire to deal with the police only through counsel,'" as required to demonstrate an invocation of Fifth Amendment right to counsel) (quoting *Edwards*, 451 U.S. at 484).

### 2.    Sixth Amendment Right to Counsel

The Sixth Amendment is concerned with the assistance of counsel in "criminal prosecutions." U.S. Const. amend. VI.  Accordingly, the "Sixth Amendment right to counsel is triggered at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge, preliminary indictment, information, or arraignment." *Fellers* v. *United States*, 540 U.S. 519, 523 (2004) (internal quotation marks omitted); *see United States* v. *Moore*, 670 F.3d 222, 233-34 (2d Cir. 2012).  The right "extends to all 'critical stages' of a criminal prosecution, including post-indictment interviews with law enforcement authorities." *United*

*States v. Rommy*, 506 F.3d 108, 135 (2d Cir. 2007) (quoting *Michigan v. Jackson*, 475 U.S. 625, 630, (1986)).  "Once the right attaches, 'the Sixth Amendment renders inadmissible in the prosecution's case in chief statements deliberately elicited from a defendant *without an express waiver of the right to counsel.*'"  *Id.* (quoting *Michigan v. Harvey*, 494 U.S. 344, 348, (1990)) (emphasis added).  "[D]eliberate elicitation under the Sixth Amendment 'covers only those statements obtained as a result of an *intentional* effort' on the part of government officials to secure incriminating statements from the accused."  *Id.* (quoting *United States v. Stevens*, 83 F.3d 60, 64 (2d Cir.1996)) (emphasis in original).

"[L]ike the Fifth Amendment protection against self-incrimination, an indicted defendant may waive the right to counsel, provided that waiver is knowing and voluntary."  *United States v. Shyne*, No. S4 05-CR-1067 (KMK), 2007 WL 1075035, at *30 (S.D.N.Y. Apr. 5, 2007) (citing *Patterson v. Illinois*, 487 U.S. 285, 292 (1988)).  "In general, evidence that an indicted defendant was informed of his right to counsel during the traditional *Miranda* warnings is sufficient evidence to support a finding that a defendant's waiver of his or her Sixth Amendment right to counsel was knowing and voluntary."  *Id.* at 296 (citing *Patterson*, 487 U.S.at 296).  Accordingly, a defendant waives his Sixth Amendment right to counsel when he is properly advised of his *Miranda* rights, indicates that he understands those rights, and thereafter makes statements to law enforcement agents.  *See United States v. Pepin*, 367 F. Appx. 262, 263 (2d Cir. 2010) (citing *Patterson*, 487 U.S.at 288, 293).

**C.   Discussion**

        **1.   The Defendant's Statements of August 29, 2012 Should Not Be Suppressed Because They Were Not Obtained in Violation of His Fifth Amendment Rights**

Estrada argues that his statements of August 29, 2012 were taken in violation of his right to counsel under the Fifth Amendment, in that the defendant had requested the appointment of counsel at his arraignment the day before in Dryden Town Court.  Accepting as true the facts set forth in the defendant's submissions, this argument must fail because Estrada "failed to invoke his Fifth Amendment right to counsel . . . in any way recognized by the law."  *See Allen*, 169 F. Appx. at 636.  Far from making a "statement that [could] reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation*," *McNeil*, 501 U.S. at 178, Estrada explicitly waived his *Miranda* rights following his arrest on August 27, 2012, including his right to have counsel present during questioning.  (*See* Gov't Ex. A.)  He again waived his *Miranda* rights before speaking to NYPD detectives on August 29, 2012.  (*See* Ex. B to Aug. 29 Declaration; Gov't Ex. C.)

Indeed, in his motion, the defendant makes no mention whatsoever of invoking his right to counsel under the Fifth Amendment in the context of "custodial interrogation" by the police. Instead, Estrada argues that his expression of desire for an attorney at his August 28, 2012 arraignment in Dryden Town Court constituted invocation of such a right.  That is simply not the law.  As the Supreme Court held in *McNeil*, the mere request for "appointment of counsel at his arraignment on [an] unrelated charge" does not signal the defendant's invocation of his Fifth Amendment right to counsel.  501 U.S. at 178-79.  Having not "expressed his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*," Estrada cannot claim that his statements to detectives on August 29, 2012 were obtained in violation of the Fifth

Amendment.  *Id.* at 178.  Accordingly, the defendant's motion to suppress those statements must be denied.[6]

### 2.   The Defendant's Statement of May 14, 2013 Should Not Be Suppressed Because It Was Not Obtained in Violation of His Sixth Amendment Right to Counsel

Accepting the facts set forth in the defendant's submissions as accurate, there is no basis to suppress the defendant's post-*Miranda* statement of May 14, 2013 on Sixth Amendment grounds.  In the first instance, the defendant concedes that he was advised of his *Miranda* rights – including his right to counsel and his right to have counsel present during any questioning – and that he indicated his full understanding of those rights, before making the challenged statement to Agent-1.[7]  In so doing, the defendant waived his Sixth Amendment right to counsel. *See Patterson*, 487 U.S. at 296; *Pepin*, 367 F. Appx. at 263.  Accordingly, the defendant's motion to suppress his May 14, 2013 statement on Sixth Amendment grounds must be denied.

Moreover, there is simply no evidence that Agent-1 "deliberately elicited" the challenged statement from Estrada.  Indeed, Agent-1 specifically informed Estrada that Agent-1 knew that Estrada was represented by counsel and therefore would not question him.  Agent-1 appropriately responded to questions from Estrada regarding the charges on which Estrada was being arrested, and discussed with Estrada the disposition of his personal effects following Estrada's incarceration.  At no point did Agent-1 question Estrada, let alone deliberately elicit

---

[6] While the defendant briefly mentions the Sixth Amendment in his motion to suppress his statements of August 29, 2012 (Mem. in Support of Def.'s Mot. to Suppress Statement of August 29, 2012 at 1), he does not go on to argue any Sixth Amendment violation in connection with the taking of those statements.  Such an argument, in any event, would likewise fail, as "the Sixth Amendment right to counsel is offense specific." *Allen*, 169 F. Appx. at 637 (citing *Texas v. Cobb*, 532 U.S. 162, 164 (2001) and *McNeil*, 501 U.S. at 175).

[7] The defendant explicitly concedes that he was apprised of his *Miranda* rights.  (May 14 Declaration at 1.)

incriminating statements from him.  Estrada's statement about the murder, made 15 minutes after Agent-1 answered Estrada's procedural questions about the charges he faced, was spontaneous and not the result of any "intentional effort" by Agent-1 to elicit admissions from the defendant. *See Rommy*, 506 F.3d at 135.  On this ground too, the defendant's motion to suppress his statement of May 14, 2013 must be denied.

## DEFENDANT'S REQUEST FOR A BILL OF PARTICULARS

**A.      Background**

      **1.      The Superseding Indictment**

On or about July 24, 2013, the superseding indictment captioned as *United States v. Robert Medina, et al.*, S1 13 Cr. 272 (PGG) (the "S1 Indictment") was unsealed in this District.

Count One of the S1 Indictment charges Estrada's co-defendants, Robert Medina and Gerod Jackson, with conspiring to distribute and possess with intent to distribute 280 grams and more of "crack" cocaine from at least in or about 2009, up to and including in or about July 2012, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).  (*See* Docket Entry No.16).  Medina is also charged in Count Two with the "use, carrying, and possession of a firearm, which was discharged," on or about July 28, 2012, "during and in relation to a drug trafficking crime . . . namely, the narcotics conspiracy charged in Count One of this Indictment." Count Three charges Estrada's co-defendant, Gerod Jackson with the "use, carrying, and possession of a firearm, which was discharged," on or about July 28, 2012, "during and in relation to a drug trafficking crime . . . namely, the narcotics conspiracy charged in Count One of this Indictment."  Finally, Count Four of the S1 Indictment charges Estrada, with the "use,

carrying, and possession of a firearm, [which] did cause the death of a person" on or about July

28, 2012, "during and in relation to a drug trafficking crime . . . namely, a narcotics conspiracy."

### 2.    Discovery

Since the arrest of defendant Ruben Estrada, the Government has collected and produced,

on a rolling basis, Rule 16 discovery materials relevant to the charges contained in the S1

Indictment.  To date, the Government has produced the following general categories of Rule 16

discovery materials to counsel for Estrada:

1. A copy of the Indictment;
2. Copies of the Arrest Warrants and the Complaints for all charged defendants, detailing statements made by the defendants, including Estrada, regarding the charged conduct;
3. The defendant's Criminal History;
4. Records relating to prior arrests of the defendant by the NYPD;
5. New York Police Department ("NYPD") documents related to shooting of Robert Medina on June 12, 2012;
6. NYPD documents related to a shooting on July 28, 2012 in the vicinity of 3922 White Plains Road;
7. NYPD documents related to a homicide on July 28, 2012 in the vicinity of 718 East 228th Street;
8. NYPD ballistics reports related to the above-described shootings and homicide;
9. Report from the New York City Office of the Chief Medical Examiner ("OCME") related to DNA analysis performed in connection with the homicide of July 28, 2012;
10. NYPD Latent Print Section documents related to fingerprint analysis performed in connection with the homicide of July 28, 2012;
11. NYPD Crime Scene Unit ("CSU") documents related to the homicide of July 28, 2012;
12. Autopsy report, and related materials, in connection with the homicide of July 28, 2012;
13. Surveillance video of July 28, 2012 taken from 755 East 228th Street;
14. Surveillance video of July 28, 2012 taken from 722 East 228th Street;
15. Photographic identification of Estrada;
16. Report regarding statements made by Estrada to law enforcement officials in the course of the investigation;
17. Documentation related to the arrest of the defendant in Dryden, New York, on August 27, 2012; and,

18.     Various phone records in connection with phone numbers associated with the charged defendants, including Estrada, and others.

In this regard, the Government recognizes that its obligations to produce discovery are ongoing in nature, and it will continue to produce relevant documents or other items as they are provided to the Government.

In addition to the evidence described above, should this matter proceed to trial, the Government expects to call several witnesses who will discuss the defendant's involvement and role in the narcotics conspiracy underlying Count Four of the S1 Indictment, details regarding the quantity of the narcotics that the conspiracy involved, and the means and methods used by members of the conspiracy including the defendant.   In response to the defendant's request for a bill of particulars, on January 31, 2014, the Government also provided a letter detailing what the Government expects the evidence at a trial would establish based on witness interviews and the Government's ongoing investigation.  (*See* Letter to Susan V. Tipograph, dated January 31, 2014, attached hereto as Gov't Ex. D.)

## B.     Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits the Court to direct the Government to file a bill of particulars.  "The purpose of a bill of particulars is to supplement the allegations in the indictment when necessary to (1) enable the defendant to prepare his defense, (2) avoid unfair surprise to the defendant at trial, and (3) preclude a second prosecution of the same offense."  *United States v. Mandell*, 710 F. Supp. 2d 368, 384 (S.D.N.Y. 2010); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  A "bill of particulars is not an investigative tool for the defendants."  *United States v. Johnson*, 21 F. Supp. 2d 329, 339 (S.D.N.Y. 1998).  "A bill of particulars should be required only where the charges of the

12

indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989).  "The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories." *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001); *see also United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (noting that "[a]cquisition of evidentiary detail is not the function of the bill of particulars").  Specifically, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied."  *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001).

"The important question is whether the information sought is *necessary*, not whether it is helpful."  *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990) *aff'd sub nom. United States v. Skowronski*, 968 F.2d 242 (2d Cir. 1992) (emphasis added).  In the context of conspiracy allegations, "the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly. It is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts."  *Feola*, 651 F. Supp. at 1132. Thus, as the Second Circuit has stated, "[t]he Government need not, when charging conspiracy, set out with precision each and every act committed by the conspirators in the furtherance of the conspiracy."  *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975).

A bill of particulars is not required when the information the defendant seeks is provided in discovery.  "If the information the defendant seeks 'is provided in the indictment or in some acceptable alternate form,' such as discovery or other correspondence, no bill of particulars in required.  *United States v. Binday*, No. 12 Cr. 152 (CM), 2012 WL 6135013, at *11 (S.D.N.Y. Dec. 10, 2012) (citing *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).

## C.     Discussion

The defendant requests particulars as to Estrada's "alleged role and participation in drug trafficking, the time period of [his] participation in drug trafficking, and how that drug trafficking was involved in the murder that the government has alleged [he] committed."  What the defense requests is precisely the type of information – here, the "whens" – that courts have held to beyond the scope of a bill of particulars.  *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001); *see also United States v. Torres*, 901 F.2d 205, 233-34 (affirming denial of motion for bill of particulars where defendant sought date he joined conspiracy, identity of coconspirators, and precise dates and locations of his overt acts).  Courts in this district have repeatedly rejected these types of requests for bill of particulars in narcotics conspiracy cases. *See, e.g., United States v. Miller*, No. 12 Cr. 368 (PAC), 2012 WL 4791992, at *4 (S.D.N.Y. Oct. 9, 2012), *United States v. Meregildo*, No. 11 Cr. 576 (WHP), 2012 WL 3834732, at *5 (S.D.N.Y. Aug. 28, 2012); *United States v. English*, No. S1 10 Cr. 431 (CM), 2011 WL 3366490, at *4 (S.D.N.Y. July 29, 2011).  "[D]isclosure of all the overt acts in furtherance of the conspiracy is not properly the function of a bill of particulars."  *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993) (internal citation omitted).  That the charge against Estrada is a serious one, accompanied by significant penalties, and the fact that he has not to date been charged in the

narcotics conspiracy underlying Count Four of the S1 Indictment, does not modify the Government's obligations under this clearly established precedent.

The discovery in this case further undermines the necessity for a bill of particulars.  As the Second Circuit said in *Bortnovsky*, "[I]f the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574.  The Government initially charged the defendant and his co-defendants in two separate Complaints, which detailed factual allegations regarding the defendant's commission of the offense alleged in Count Four of the S1 Indictment, and also set forth statements from several individuals regarding the narcotics conspiracy charged in Count One.  Additionally, the Government has provided to Estrada various phone records demonstrating contact among the three charged defendants, including contact between Estrada and his co-defendant, Robert Medina.  In an attempt to provide defense counsel with additional information, the Government has synthesized information obtained from lay witnesses and cooperating witnesses.  (*See* Gov't Ex. D.)  The Government in a typical case would not – nor is it required to – provide such details to the extent they are from witness until such a time when a trial date has been set and the Government has provided information to satisfy its obligations pursuant to the Jencks Act and Title 18, United States Code, Section 3500.  To provide, at such an early juncture, more details of what these witnesses would say if they Government decided to call them as witnesses at a trial, would be essentially requiring the Government to provide 3500 material for witnesses now, before a trial date has even been set.  This is not the proper function of a bill of particulars.

Because the S1 Indictment – coupled with the discovery provided in this case and the letter attached hereto as Government Exhibit E – provides sufficient details as to the narcotics conspiracy underlying Count Four, the defendant's motion for a bill of particulars should be rejected.

## DEFENDANT'S MOTION FOR RULE 16 DISCOVERY MATERIALS

Since the defendant filed his motion for *Brady* and Rule 16 discovery materials on January 10, 2014, the Government has produced to the defendant many of the items specifically requested in the motion. As of January 31, 2014, the parties are still in ongoing discussions, and are attempting to resolve the remaining issues raised by the motion. For the time being, the parties jointly request that the Court hold the defendant's discovery motion in abeyance, while we continue to seek a full resolution of the discovery requests contained therein.

## **CONCLUSION**

For the foregoing reasons, defendant Ruben Estrada's motions to suppress his statements of August 29, 2012 and May 14, 2013 should be denied without a hearing and Estrada's motion for a bill of particulars should be denied.  In addition, the parties jointly request that the Court temporarily hold in abeyance Estrada's motion for discovery materials, as the parties work to resolve the issue raised therein.

Dated:   New York, New York
      January 31, 2014

         Respectfully submitted,

         PREET BHARARA
         United States Attorney
         Southern District of New York


      By:_____/s/_____
         Christopher J. DiMase
         Sarah R. Krissoff
         Assistant United States Attorneys
         Southern District of New York
         (212) 637-2433 / 2232

17

# EXHIBIT A



## Dryden Police Department
## Advisement of Rights – Miranda Warnings

Name of person interviewed: _Ruben Estrada_
Location of Interview: _Dryden PD_
Name of Officer advising of rights: _Bernhardt_
Other persons present: _____
Video Log: ☐ YES ☑ NO
Time that person was advised: _8:55_ ☐ AM ☑ PM
Date: _08/27/12_

- I would like to ask you some questions, but before I do, I must advise you of your rights.

- You have the right to remain silent. Anything you say can be used against you in court.

- You have the right to a lawyer with you during questioning.

- If you want a lawyer but cannot afford one, one will be provided for you without cost before any questioning.

Do you understand these rights?

(Record response): _Yes Sir_

Having these rights in mind, are you willing to answer questions now?

(Record response): _Yes Sir_

Interviewee's Signature: _____

Witness (if applicable): _____

# **<u>EXHIBIT B</u>**

: 00372

STATE OF NEW YORK
COUNTY OF TOMPKINS
TOWN COURT OF DRYDEN

SECURING ORDER
DOCKET # _____
DATE OF BIRTH : _____
NYSID # _____

THE PEOPLE OF THE STATE OF NEW YORK
V.

RUBEN ESTRADA
_____
           Defendant

The above named defendant having appeared before the under signed on a (ACCUSATORY INSTRUMENT)/ (WARRANT), charging the defendant with the most serious offense of ___CRIM POSS WEAP 3RD___
in violation of Section __265.02__ Sub Div _____ of the __PENAL__ Law a
Class __D__ Felony ☒ Misdemeanor ☐ Violation ☐ Infraction ☐

AND (Check one box only)
☐ further court attendance being required on the __10TH__ day of __SEPTEMBER__ 20 ·12
   at __5:00__ (PM) before the: __TOWN__ Court of __DRYDEN__;
OR ☐ the matter of having been transferred for action of the Grand Jury

Now therefore it is ORDERED that the defendant be
   ☐ RELEASED; (Check one box only)
      ☐ on bail fixed in the amount of $ _____ and received by this Court;
   OR ☐ Other (Explain) _____

OR ☒ REMANDED to the custody of County Sheriff/Commissioner of Correction
   until his/her appearance is required as set forth, (Check one box only)
   OR ☒ until bail is posted in the amount of __$25,000__ CASH OR __$50,000__ BOND SECURED
   OR ☐ until bail in an amount fixed by a Superior Court has been posted                         specify type
   OR ☐ without bail
AND that this ORDER includes the lesser offense(s) of:

_____
_____
_____

SPECIAL ORDERS/INSTRUCTIONS
   ☐ CPL 730 (competency) Exam ordered (UCS# 16-A Attached)
   ☐ Local Mental Health Referral
   ☐ Additional Comments _____

DATED: __8/28/2012__          CHRISTOPHER E. CLAUSON
                              (PRINT OR TYPE NAME)                    JUDGE OR JUSTICE

RELEASE INFORMATION
If is hereby ORDERED that the defendant (Check one box only)
   ☐ be released from custody having been CONVICTED of the most serious offense of
      _____ in violation of Section _____ Sub Div _____ of the
      Law a (Class ___ Misd ☐ Violation ☐ Infraction ☐ AND SENTENCED TO TIME SERVED.
OR ☐ be released from custody (OTHER) _____

   DATED: _____

   _____
   (PRINT OR TYPE NAME)                         JUDGE OR JUSTICE

# **<u>EXHIBIT C</u>**

DATE: 8/29/12 TIME: 1:15 LOCATION: 47pct. DETECTIVE SQUAD OFFICE Ithica, NY

SUBJECT: Ruben Estrada D.O.B. _____ PHONE# _____

ADDRESS: _____

1. You have the right to remain silent and refuse to answer questions.
Do you understand question #1? Subject replied: Yes RE

2. Anything you do say may be used against you in a court of law.
Do you understand question #2? Subject replied: Yes RE

3. You have the right to consult an attorney before speaking to the police and have an attorney present during any questioning now or in the future
Do you understand question #3? Subject replied: yes RE

4. If you can not afford an attorney, one will be provided for you without cost.
Do you understand question #4? Subject replied: yes RE

5. If you do not have an attorney available, you have the right to remain silent, until you have had an oppertunity to consult with one.
Do you understand question #5? Subject replied: Yes RE

6. Now that I have advised you of your rights, are you willing to answer questions? Subject replied: yes RE

GIVEN BY: Det Mullarkey SUBJECT SIGNATURE: RE

THE SUBJECT MADE THE FOLLOWING STATEMENT ON _____ AT _____

TIME COMPLETED: _____ SUBJECT SIGNATURE: _____

DATE COMPLETED: _____ DETECTIVE SIGNATURE: _____

PAGE _____ OF _____

# **<u>EXHIBIT D</u>**



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 31, 2014

**BY ELECTRONIC MAIL**

Susan V. Tipograph, Esq.
11 Park Place, Suite 914
New York, NY   10007
stipograph@yahoo.com

   **Re:** *United States* v. *Ruben Estrada,*
      **S1 13 Cr. 272 (PGG)**

Dear Ms. Tipograph:

   The Government provides this letter in response to your request for a bill of particulars in the above captioned case, specifically, in connection with the narcotics conspiracy referred to in Count Four of the S1 Superseding Indictment (the "S1 Indictment").   As the Government indicated in its response to defendant Robert Medina's previous request for a bill a particulars in this case (*see* Docket Entry 44), the Government's investigation into the narcotics conspiracy already alleged in Count One of the S1 Indictment has been ongoing.

   Based on its continuing investigation, the Government expects that the evidence at a trial would establish that starting at least in or about 2012, your client, Ruben Estrada, participated in the narcotics conspiracy charged in Count One of the S1 Indictment.   The evidence would further establish that your client was involved in this conspiracy along with several co-conspirators including, but not limited to, co-defendants Robert Medina and Gerod Jackson, who have already been charged in Count One.   The Government further believes that the evidence at a trial would establish that the objects of the narcotics conspiracy included the distribution of both marijuana and cocaine base, in a form known as "crack cocaine," and that the amount of crack cocaine foreseeable to the members of the conspiracy was in excess of 280 grams.   The evidence at trial would establish that Estrada and his co-conspirators engaged in acts in connection with the narcotics conspiracy in the vicinity of East 228th Street, Bronx, New York, among other locations.   Finally, the Government expects that the evidence would establish that the shootings on or about July 28, 2012 in the vicinity of East 222nd Street and White Plains Road, and in the vicinity of 718 East 228th Street, resulting in the homicide of Gary Clark, were in furtherance of the alleged narcotics conspiracy, and related to: (1) a debt that was owed in connection with the narcotics conspiracy, and (2) an ongoing argument involving members of the conspiracy and others regarding drug territory.

Susan V. Tipograph, Esq.
January 31, 2014
Page 2 of 2


      The Government is continuing to investigate the narcotics conspiracy and reserves it right to supplement and/or modify the above information in advance of trial.   Please contact either of the undersigned should you have additional questions.


            Respectfully submitted,

            PREET BHARARA
            United States Attorney
            Southern District of New York

By:      _____/s/_____
            Christopher J. DiMase
            Sarah Krissoff
            Assistant United States Attorneys
            (212) 637-2433 / 2232