USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/10/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ROBERT MEDINA,
a/k/a "Pops,"

　　　　　　　　　　　　Defendant.

**MEMORANDUM
OPINION & ORDER**

S3 13 Cr. 272 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

　　　　Defendant Robert Medina is charged with (1) conspiring to distribute, and to possess with intent to distribute, 280 grams or more of crack cocaine, and marijuana, in violation of 21 U.S.C. § 846; (2) using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (3) using and carrying a firearm on July 28, 2012, in connection with a drug trafficking crime, and causing the death of Gary Clark through use of a firearm, in violation of 18 U.S.C. § 924(j). (S3 Indictment (Dkt. No. 111)) The Government alleges, inter alia, that Medina and co-conspirator Ruben Estrada were engaged in a drug trafficking conspiracy in the Bronx, New York. (June 6, 2014 Govt. Br. (Dkt. No. 132) at 2-3) According to the Government, a dispute over a drug debt led to Medina's involvement in two shootings on July 28, 2012. (Id.) The shootings left one man injured and another dead. (Id.)

　　　　On June 6, 2014, the Government filed a motion in limine asking this Court to rule that certain statements made by Estrada are admissible against Medina as statements against penal interest under Fed. R. Evid. 804(b)(3).[1] (Id. at 7-10) The Government will offer Estrada's statements through Robert Johnson, an individual who shared a jail cell with Estrada about one

---

[1] On April 23, 2014, this Court granted Medina's motion to sever his trial from Estrada's. (Dkt. No. 115) Estrada's trial is scheduled for February 23, 2015. (Dkt. No. 146)

month after the July 28, 2012 shootings. (Id. at 4-5) For the reasons stated below, the Government's motion will be granted.

## BACKGROUND

Medina's arrest arose from the NYPD's investigation of two shootings in the Bronx on July 28, 2012. (Suppression Hearing Tr. (Dkt. No. 24) 16, 142) The first shooting took place at about 1:00 a.m. near 222nd Street and White Plains Road, and resulted in a non-fatal injury to a bystander outside Scotty Pump Ups Tavern ("Scotty's Tavern"). (Id. at 35, 196) The second shooting took place at about 5:00 a.m. near 228th Street and White Plains Road, and led to the death of Gary Clark. (Id. at 16, 18, 196) According to the Government, the shootings resulted from a dispute over a drug debt between Medina and Estrada and two other drug dealers – Clark and Gerod Jackson. (June 6, 2014 Govt. Br. (Dkt. No. 132) at 2-3)

On August 27, 2012 – about one month after the July 28 shootings – Estrada was arrested in Dryden, New York, after two assault rifles were recovered from his vehicle. (Id. at 4) Estrada was charged with criminal possession of a weapon. (Id.) After his arrest, Estrada was incarcerated in Tompkins County Jail, where he shared a cell with Robert Johnson for about one month. (Id.) Johnson is expected to testify that during this time Estrada made the following statements to him (the "Estrada Statements"):

    (1)    Before he was arrested, Estrada and his business partner were selling drugs together in their neighborhood in the Bronx, New York, and were making substantial profits from their drug trafficking operation.

    (2)    On one occasion, after observing a man selling drugs on their block without permission, Estrada hit the man with a gun and the gun discharged.

    (3)    On another occasion, Estrada and others went out to a local bar, and saw some individuals that they had problems with in the neighborhood over drugs. Estrada's partner fired a gun at those individuals.

> (4)     Later the same night, at around 5:00 or 6:00 a.m., the individuals whom Estrada's partner fired upon at the club came to the block where Estrada and his partner were located. A shootout ensued. Estrada ran into an alley, grabbed a shotgun, and shot and killed one of the individuals. Estrada's partner was present at the time of the shootout, and also fired a gun at the individuals who came to the block. Immediately after the shootout, Estrada ran into a nearby apartment, from which he observed a body lying on the street.
>
> (5)     Following the shootout, Estrada and his partner attempted to obtain surveillance video from the superintendent of a building on the block, in order to cover up the murder. They were not successful in obtaining that video.
>
> (6)     After the murder, Estrada provided the shotgun that he used in the shooting to an uncle who worked at a mechanics shop. The uncle melted the gun so that it could not be recovered by the authorities.

(Id. at 4-5)

Medina argues that these statements are hearsay, and that the requirements for application of the statement against penal interest hearsay exception have not been met. (June 20, 2014 Def. Br. (Dkt. No. 150) at 1-10) Medina also claims that these statements should be excluded as more prejudicial than probative under Fed. R. Evid. 403. (Id. at 10-11)

## DISCUSSION

### I.     APPLICABLE LAW

Rule 804(b)(3) provides that – where the declarant is unavailable – a statement is "not excluded by the rule against hearsay" if it is one that

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency to . . . expose the declarant to . . . criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

Fed. R. Evid. 804(b)(3); see United States v. Wexler, 522 F.3d 194, 202 (2d Cir. 2008) ("'[T]o satisfy [the penal interest] exception [to the hearsay rule], the proponent must show (1) that the

3

declarant is unavailable as a witness, (2) that the statement is sufficiently reliable to warrant an inference that a reasonable man in [the declarant's] position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement.'") (quoting United States v. Katsougrakis, 715 F.2d 769, 775 (2d Cir. 1983)) (first alteration added).

"In assessing whether a statement is against penal interest within the meaning of Rule 804(b)(3), the district court must first ask whether 'a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest.'" United States v. Gupta, 747 F.3d 111, 127 (2d Cir. 2014) (quoting United States v. Saget, 377 F.3d 223, 231 (2d Cir. 2004)). "Whether a challenged statement is sufficiently self-inculpatory can only be answered by viewing it in context. Thus, this determination must be made on a case-by-case basis." United States v. Williams, 506 F.3d 151, 155 (2d Cir. 2007) (citing Williamson v. United States, 512 U.S. 594, 603-04 (1994)). "The proffered statement '[need] not have been sufficient, standing alone, to convict [the declarant] of any crime,' so long as it would have been 'probative' in a criminal case against him." Gupta, 747 F.3d at 127 (quoting United States v. Persico, 645 F.3d 85, 102 (2d Cir. 2011)) (alterations in original).

In evaluating whether statements are self-inculpatory, courts must take a statement-by-statement approach. See Williamson, 512 U.S. at 600-01, 604. "Rule 804(b)(3) . . . does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." Id. at 600-01. Instead, a "[d]istrict [c]ourt [must] . . . inquire[ ] whether each of the statements . . . was

4

truly self-inculpatory. . . . [T]his can be a fact-intensive inquiry, which . . . require[s] careful examination of all the circumstances surrounding the criminal activity involved." Id. at 604.

The Second Circuit has noted, however, that statements may be "sufficiently self-inculpatory[ to satisfy the exception, if] they describe[] acts that [the declarant] and [the defendant] committed jointly," particularly where "the context of these statements shows that [the declarant] was not attempting to minimize his own culpability, shift blame onto [the defendant], or curry favor with authorities." Williams, 506 F.3d at 155.

"If the court finds that the statement is against the declarant's penal interest, the court must then determine whether there are corroborating circumstances indicating 'both the declarant's trustworthiness and the truth of the statement.'" Gupta, 747 F.3d at 127 (quoting United States v. Lumpkin, 192 F.3d 280, 287 (2d Cir. 1999)). "'[T]he inference of trustworthiness from the proffered "corroborating circumstances" must be strong, not merely allowable.'" Id. (quoting United States v. Salvador, 820 F.2d 558, 561 (2d Cir. 1987)). "Among the factors to consider in determining 'trustworthiness' are: '(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness.'" United States v. Watts, No. S3 09 Cr. 62 (CM), 2011 WL 167627, at *3 (S.D.N.Y. Jan. 11, 2011) (quoting United States v. Guillette, 547 F.2d 743, 754 (2d Cir. 1976)) (alteration in original).

## II.  ADMISSIBILITY UNDER RULE 804(b)(3)

Estrada has represented that he will invoke his Fifth Amendment privilege against self-incrimination if called to testify, and the parties do not dispute that he is unavailable within the meaning of Rule 804(b)(3). See United States v. Savoca, 335 F. Supp. 2d 385, 390

5

(S.D.N.Y. 2004) ("[T]he 'unavailability' component is established by the fact that [the declarant] is expected to invoke his Fifth Amendment privilege."). Accordingly, this Court considers below whether (1) the Estrada Statements are all against Estrada's penal interest; and (2) the Estrada Statements are trustworthy.

### A.   "Against Penal Interest"

#### 1.   Statements that Only Inculpate Estrada: Estrada Statements Two and Six (Assault on Competing Drug Dealer and Destruction of Evidence)

Estrada Statements Two and Six – in which Estrada states that he struck a competing drug dealer with a firearm, and had his uncle melt a shotgun to conceal his involvement in a murder – refer only to conduct by Estrada. These statements thus satisfy the threshold inquiry of being against Estrada's penal interest. A reasonable person would know that admitting to committing an assault and to destroying evidence of a murder would "clearly tend[ ] to subject him to criminal liability." See United States v. Lieberman, 637 F.2d 95, 104 (2d Cir. 1980). In addition, these statements "tied [Estrada] to an illegal [drug trafficking] scheme" and the use of firearms in furtherance of that scheme. See United States v. Stratton, 779 F.2d 820, 828-29 (2d Cir. 1985) (finding that declarant's statements regarding the "history of the conspiracy" were "overwhelmingly contrary to his penal interests").

Medina argues that these statements should be excluded as irrelevant, however. (June 20, 2014 Def. Br. (Dkt. No. 150) at 6-7 n.4, 10-11) According to Medina, statements regarding the melted gun are only relevant to a Pinkerton theory of liability for the Clark homicide, see Pinkerton v. United States, 328 U.S. 640, 645-46 (1946), but the Government has not alleged that the Clark shooting was an act in furtherance of the charged conspiracy. (Id. at 6-

7 n.4) Medina also claims that Estrada's statements are irrelevant because the acts he describes are not evidence of the charged offenses. (Id. at 10-11)

Medina's arguments are not persuasive. Under the Government's theory, the acts Estrada describes were committed by him in furtherance of the drug trafficking conspiracy charged in Count One. The Government alleges that Estrada and Medina used firearms and violence to defend their drug trafficking territory and to collect on drug-related debts. Estrada's assault on a competitor selling drugs on the Medina/Estrada "block," and destruction of evidence regarding a shooting that arose out of a drug debt, are acts in furtherance of the charged conspiracy, regardless of whether the Government proceeds on a Pinkerton theory at trial. See United States v. LaSpina, 299 F.3d 165, 176 (2d Cir. 2002) (in establishing the elements of a conspiracy, "an overt act may be made by 'only a single one of the conspirators'") (quoting Braverman v. United States, 317 U.S. 49, 53 (1942)). In sum, Estrada Statements Two and Six are both against Estrada's penal interest and relevant to the charged conspiracy.

### 2. Statements That Implicate Both Estrada and His "Partner"

#### a. Estrada Statements One and Five (Drug Trafficking and Unsuccessful Effort to Obtain Surveillance Footage)

In Estrada Statement One, Estrada reports that he and his unnamed partner sold drugs together in their neighborhood in the Bronx, and made substantial profits from this activity. In Estrada Statement Five, Estrada describes how he and his "partner" attempted to obtain a surveillance video from a building superintendent in order to cover up their involvement in a murder that took place on their block. Medina does not argue these statements are not against Estrada's penal interest. (See June 20, 2014 Def. Br. (Dkt. No. 150) at 5-7) Given that these statements implicate both Estrada and his partner in joint criminal conduct, they are

7

sufficiently self-inculpatory of Estrada to satisfy the "against penal interest" requirement of the hearsay exception. See Williams, 506 F.3d at 155.

### b. Estrada Statement Four (Clark Homicide)

In Estrada Statement Four, Estrada describes a "shootout" involving himself and his partner. The description is consistent with other evidence concerning the Clark homicide. Medina argues, however, that Estrada Statement Four is an account of discrete acts performed by Estrada and his partner, as opposed to joint criminal activity. (June 20, 2014 Def. Br. (Dkt. No. 150) at 5-7) For example, Estrada states that he retrieved a shotgun and used it to shoot and kill another individual on the block, while his partner fired a gun at the same individuals.

Medina's argument is not persuasive. Estrada Statement Four directly implicates both Estrada and his partner in the shootout. The fact that in one portion of the statement Estrada talks about retrieving a gun and firing it, and in another portion he describes his partner shooting at the same individuals, does not demonstrate that these are separate, unrelated acts. The essence of Estrada Statement Four is that Estrada and his partner were jointly engaged in shooting at individuals who had appeared on their block in connection with a feud that involved their joint drug trafficking operation. Estrada attributes the most serious conduct – the murder of one of these individuals – to himself.

In sum, in Estrada Statement Four Estrada inculpates himself sufficiently for his account to be considered a statement against his penal interest. Moreover, this statement is an account of joint criminal activity, as opposed to a series of unrelated acts. See Williams, 506 F.3d at 155 (affirming admission of witness's testimony in a triple homicide case, where the witness testified that a co-defendant told her that the defendant had shot one victim, while the declarant shot another victim in the same car during the same incident).

8

### c. Estrada Statement Three (Shooting Outside Scotty's Tavern)

In Estrada Statement Three, Estrada describes an encounter at a local bar between Estrada and his partner and competing drug dealers in the neighborhood, during which his partner fires a gun at these individuals. The Government argues that this account refers to a shooting outside Scotty's Tavern on July 28, 2012. (July 2, 2014 Tr. 46) Although Estrada Statement Three does not – standing alone – directly implicate Estrada, the Second Circuit's decision in United States v. Saget, 377 F.3d 223 (2d Cir. 2004) demonstrates that Estrada's account of this incident – when viewed in context – is sufficiently self-inculpatory of Estrada to constitute a statement against his penal interest.

In Saget, the defendant argued that the trial court erred in admitting statements that were made by Beckham, an alleged co-conspirator. Id. at 225-26. Beckham told a government informant about his and Saget's involvement in a gun-running scheme, "relaying his and Saget's gun-running practices, profits, and past exploits in a manner that implicated both himself and Saget." Id. at 225. The Second Circuit held that these statements were properly admitted under Fed. R. Evid. 804(b)(3) because "the bulk of Beckham's statements were self-inculpatory[, in that] they described acts that Saget and Beckham [had] committed jointly." Id. at 231. The admitted statements included "Beckham's statement that the authorities arrested one of Saget's straw purchasers while Saget himself escaped investigation." Id. Although Beckham did not refer to himself in this statement, the Second Circuit agreed with the district court's conclusion that the statement was "self-inculpatory in context, . . . because [it] reflected Beckham's attempt to give the CI examples of how he and Saget operated and why their scheme worked." Id.

Here, Estrada Statement Three is likewise self-inculpatory when considered in context. Estrada acknowledges in this statement that the people his partner shot at were "individuals that they had problems with in the neighborhood over drugs." (June 6, 2014 Govt. Br. (Dkt. No. 132) at 4) This statement must be considered in the context of Estrada's other statements acknowledging that he and his partner were engaged in a feud with other drug dealers. Estrada Statement Three must also be considered in the context of Estrada Statement Four, in which Estrada describes how later that same night a shootout took place on "the block" between Estrada and his partner and the same individuals that they had encountered in the bar, and that Estrada shot and killed one of these individuals.

Considered in context, Estrada Statement Three provides background and motive for the later shooting and connects Estrada to the ongoing feud between him and his partner and the other drug dealers. Stated another way, Estrada's presence at the earlier shooting helps explain his conduct later that night. Estrada Statement Three is thus probative of Estrada's criminal liability for the later, fatal shooting. See Persico, 645 F.3d at 102 ("The statements by Cutolo that he routinely met with Persico at 92nd and Shore, and that they met at that spot because it enabled them to evade surveillance by the FBI, fit within this exception [for statements against penal interest]. While those statements would not have been sufficient, standing alone, to convict Cutolo of any crime, they would have been probative in a criminal trial against Cutolo to show his membership in the Colombo Crime Family and to support an inference that criminal messages were passed when he and Persico met at that spot.").

10

For all these reasons, this Court concludes that Estrada Statement Three is sufficiently self-inculpatory to constitute a statement against Estrada's penal interest.[2]

### B. Trustworthiness

Having found that all of the Estrada Statements are sufficiently self-inculpatory to be deemed "against [Estrada's] penal interest," this Court must now consider whether the Estrada Statements are sufficiently trustworthy to warrant their admission under Rule 804(b)(3). As discussed above, in determining the "trustworthiness" of statements offered under Rule 804(b)(3), courts in this Circuit consider: "'(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness.'" Watts, 2011 WL 167627, at *3 (quoting Guillette, 547 F.2d at 754) (alteration in original).

As to timing, the Estrada Statements were made less than a month after the shootings on July 28, 2012. Given the proximity in time, this factor supports a finding of trustworthiness.

---

[2] Medina also argues that Estrada would need to understand Pinkerton liability in order to appreciate that Estrada Statements Three and Four were against his penal interest. (June 20, 2014 Def. Br. (Dkt. No. 150) at 6) It is not necessary for Estrada to have "realized that he was subjecting himself to criminal liability simply by making these statements," however. Lieberman, 637 F.2d at 103-04. "The Rule does not require that the declarant be aware that the incriminating statement subjects him to immediate criminal prosecution. Rather, it simply requires that the incriminating statement sufficiently 'tended' to subject the declarant to criminal liability 'so that a reasonable man in his position would not have made the statement unless he believed it to be true.'" Id. at 104 (quoting United States v. Lang, 589 F.2d 92, 97 (2d Cir. 1978)). As discussed above, a reasonable person in Estrada's position would have recognized that Estrada Statements Three and Four tended to subject him to criminal liability, because they connected him to a drug trafficking conspiracy and a shootout that resulted in a homicide.

11

As to the party to whom the statements were made, Johnson was Estrada's cellmate for about a month. While Johnson is not a close friend of Estrada, it is reasonable to infer that they developed a relationship during the month they spent together behind bars. Moreover, given that Johnson was simply another inmate and not a law enforcement officer, it does not appear that Estrada had any motive to implicate Medina in criminal conduct. For all these reasons, this factor favors a finding of trustworthiness. See United States v. Pike, No. 01 Cr. 129A, 2006 WL 582042, at *3 (W.D.N.Y. Mar. 6, 2006) (finding that declarant's statements to another inmate were sufficiently trustworthy because, inter alia, "the statements implicating Pike were made to an acquaintance, in the context of a friendly conversation"); see also Saget, 377 F.3d at 230 (finding statements trustworthy where the declarant "believed that he was speaking with a friend – their conversations involved discussions of personal issues such as child support as well as details of the gun-running scheme – in a private setting"); United States v. Sasso, 59 F.3d 341, 349-50 (2d Cir. 1995) ("The circumstances of Armienti's statements to [his girlfriend] strongly suggest that his inculpation of Sasso was reliable. . . . [T]he statements were made to Kramer in private; there was no police or other official interrogation."); United States v. Matthews, 20 F.3d 538, 546 (2d Cir. 1994) (finding "trustworthiness condition" met where "[t]he statements were not made to law enforcement authorities, were not made in response to questioning, and were not made in a coercive atmosphere. Rather, they were volunteered by [the declarant] to his girl-friend, an intimate and confidante, in the private recesses of their home. There were no coercive pressures, and there was no attempt to curry favor with authorities. Indeed, when he made the statement to [his girlfriend], [the declarant] had no reason to expect that his admission would ever be disclosed to the authorities."); United States v. Dames, No. 04 Cr. 1247 (PAC), 2007 WL 1129323, at *4 (S.D.N.Y. Apr. 12, 2007) (quoting Matthews, 20 F.3d

12

at 546) ("The Second Circuit has held that . . . statements that simultaneously inculpate the declarant and the defendant are admissible when made to an 'ally,' rather that a stranger or law enforcement official, and where there is no reason to suspect that the 'inculpatory portion is any less trustworthy than the part of the statement that directly incriminates the declarant.'").

With respect to corroboration, defense counsel has conceded that all of the Estrada Statements will be corroborated by other evidence at trial.[3] Much of the corroborating evidence – including footage from a security camera that recorded the Clark shooting at East 228th Street and White Plains Road, witness statements implicating Medina in using a firearm outside Scotty's Tavern, NYPD detectives' observations at the murder scene, and Medina's post-arrest statement confirming the encounter at Scotty's Tavern and the later encounter outside 721 East 228th Street – was presented during a suppression hearing. (Suppression Hearing Tr. (Dkt. Nos. 24, 40) at 19, 23-24, 57-58, 39-41, 87, 104, 131, 191, 368, 372, 413-14; GX 3503-10) It is evident from the Section 3500 material provided to the Court and to defense counsel that several cooperating witnesses – and Medina's former girlfriend – will provide further corroboration.

The Government has also represented that it will offer witness testimony corroborating Estrada's statements that he and his business partner were involved in a narcotics conspiracy, and that Estrada struck a competing drug dealer with a firearm, and that the gun discharged. (See June 6, 2014 Govt. Br. (Dkt. No. 132) at 10, 18-19; July 2, 2014 Tr. 43-46)

---

[3] MR. RODY: Judge, I expect that they're going to have witnesses come in and corroborate all these things, all six of them. What I'm talking about it, there are no – it's – there's corroboration of the facts that the guy will say Estrada said. I'm saying it's not reliable that Estrada said these things to him in jail . . . It's the fact that they're in jail. . . . [I]t's not inherently reliable what they say.

(July 2, 2014 Tr. 47-48)

13

Medina has also offered no explanation as to how Johnson would have learned the details of the shootings on July 28, 2012, other than from Estrada.

The Court concludes that the "proffered 'corroborating circumstances'" are quite strong, and that this factor likewise favors a finding of trustworthiness. See Gupta, 747 F.3d at 127 (quoting Salvador, 820 F.2d at 561).

As to "the extent to which the declaration is really against the declarant's penal interest," Watts, 2011 WL 167627, at *3 (quoting Guillette, 547 F.2d at 754), this factor likewise favors a finding of trustworthiness. Estrada tells Johnson that he committed a murder. Moreover, in his statements Estrada does not "attempt[] to minimize his own culpability[or to] shift blame onto [his partner]." Williams, 506 F.3d at 155. There is likewise no evidence that Estrada was attempting to "curry favor with authorities." Id. Indeed, Estrada had no reason to believe that Johnson would share his statements with the Government.

As to the last factor – availability of the declarant – it is undisputed that Estrada is unavailable.

In sum, analysis of all of the trustworthiness factors indicates that the Estrada Statements are sufficiently trustworthy to be admitted under Rule 804(b)(3).

Medina argues, however, that the Estrada Statements should be found untrustworthy because Estrada contradicted these statements in an August 14, 2013 affidavit he submitted to the U.S. Attorney's Office. (See June 20, 2014 Def. Br. (Dkt. No. 150) at 8-10; Rody Decl. (Dkt. No. 151), Ex. A)  While it is true that "inconsistent stories suggest a . . . risk of fabrication," United States v. Doyle, 130 F.3d 523, 544 (2d Cir. 1997), Estrada's August 14, 2013 affidavit does not undermine this Court's finding that the Estrada Statements are trustworthy.

The first indictment naming Medina, Ruben Estrada, and Gerod Jackson as defendants in this case was obtained by the Government on July 24, 2013. (S1 Indictment (Dkt. No. 16)) Three weeks later, all three defendants prepared a joint affidavit in which they each exculpate the others. (Rody Decl. (Dkt. No. 151), Ex. A) In their joint affidavit, all three defendants deny (1) participating in a narcotics conspiracy; (2) possessing or discharging firearms in furtherance of a narcotics conspiracy; or (3) involvement in a dispute about a debt related to narcotics trafficking. (Id.) Given the circumstances in which this affidavit was prepared – a joint, self-serving effort by three co-defendants to exculpate themselves – this Court gives it little weight.

\* \* \* \*

The Court concludes that the Estrada Statements are admissible under Rule 804(b)(3) subject, of course, to an analysis of whether they are more probative than prejudicial under Fed. R. Evid. 403.

### III. ADMISSIBILITY UNDER RULE 403

Under Fed. R. Evid. 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice. . . ." Medina argues that the Estrada Statements should be excluded under Rule 403 because Johnson will not identify Medina by name, and the jury will be left with the unfair impression that Estrada's "partner" must be Medina, because Medina is the only defendant on trial. (June 20, 2014 Def. Br. (Dkt. No. 150) at 10)

This argument ignores the fact that "the prosecution may prove its case entirely by circumstantial evidence so long as guilt is established beyond a reasonable doubt." United States v. Glenn, 312 F.3d 58, 64 (2d Cir. 2002). In particular, "[i]dentity can be inferred through

15

circumstantial evidence." United States v. Kwong, 14 F.3d 189, 193 (2d Cir. 1994). Whether the "partner" Estrada references in these statements is Medina presents a question of fact that the jury will resolve. But there is nothing "unfairly prejudicial" about the Government attempting to demonstrate, through circumstantial evidence, that Medina is "the partner."

Moreover, the Estrada Statements are highly probative of the issues in this case; they constitute admissions by one of Medina's alleged co-conspirators that relate directly to the drug conspiracy charged in Count One and the firearms violations charged in Counts Two and Four. Although the Estrada Statements are probative of Medina's guilt, they are not "unfairly prejudicial" within the meaning of Rule 403. See United States v. Quattrone, 441 F.3d 153, 186 (2d Cir. 2006) ("Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.") (internal citations omitted).

To the extent that Medina is concerned that the jury may conclude that he is "the partner" based solely on the fact that only Medina is on trial, defense counsel may submit a proposed jury instruction concerning this issue.

Because the probative value of the Estrada Statements is not substantially outweighed by a risk of unfair prejudice to Medina, Rule 403 presents no barrier to admission of the Estrada Statements.

## CONCLUSION

For the reasons stated above, the Government's motion in limine to admit the Estrada Statements is granted.

Dated: New York, New York
       July 9, 2014

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge