USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/20/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ROBERT MEDINA,

                Defendant.

**MEMORANDUM
OPINION & ORDER**

13 Cr. 272 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Indictment S3 13 Cr. 272 charges Defendant Robert Medina in Count One with conspiring to distribute, and to possess with intent to distribute, 280 grams or more of crack cocaine, and marijuana, in violation of 21 U.S.C. § 846; in Count Two, with using, carrying, and brandishing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), on occasions other than the murder of Gary Clark on July 28, 2012; and in Count Three with using and carrying a firearm in connection with a drug trafficking crime on July 28, 2012, and causing the death of Gary Clark through use of that firearm, in violation of 18 U.S.C. § 924(j).[1] (S3 Indictment (Dkt. No. 111))

        Medina proceeded to trial on July 8, 2014. On July 25, 2014, the jury returned a verdict finding him guilty of conspiring to distribute or possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846, and of using, carrying, and brandishing a firearm in connection with the charged drug trafficking conspiracy, as charged in Count Two, and in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Verdict Form (Dkt. No. 197)) The jury returned a not

---

[1] The Section 924(j) charge is Count Four in the S3 Indictment but was re-numbered at trial for purposes of the verdict form. The Section 924(j) charge will be referred to as Count Three in this opinion to avoid confusion.

guilty verdict on the Section 924(j) count, and also found that the Government had not demonstrated, by proof beyond a reasonable doubt, that Medina had participated in a conspiracy to distribute crack cocaine. (Id.) Pursuant to Federal Rule of Criminal Procedure 29, Medina has moved for a judgment of acquittal on Counts One and Two, arguing that the Government offered insufficient evidence that he participated in a conspiracy to distribute, or possess with intent to distribute, marijuana. (Dkt. No. 196) For the reasons set forth below, Medina's motion will be denied.

## BACKGROUND

Medina's arrest arose from the New York City Police Department's investigation of two shootings in the Bronx on July 28, 2012. The first shooting took place at about 1:00 a.m. near 222nd Street and White Plains Road, and resulted in a non-fatal injury to a bystander outside Scotty Pump Ups Tavern. (Trial Tr. ("Tr.") at 801-08, 1258-59, 1273-77) The second shooting took place at about 5:00 a.m. near 228th Street and White Plains Road, and caused the death of Gary Clark. (Tr. 555-70, 808-10)

At trial, the Government alleged, inter alia, that in 2012 Medina and co-conspirator Ruben Estrada sold crack cocaine and marijuana together in the area of East 228th Street and White Plains Road in the Bronx. According to the Government, the July 28, 2012 shootings arose from a dispute over a drug debt between Medina and Estrada on the one hand, and another drug dealer – Gerod Jackson – on the other, who sold drugs with Gary Clark on a nearby block. (Tr. 1968-76) The Government argued at trial that – in the months leading up to July 28, 2012 – Medina repeatedly threatened Jackson, and assaulted him, in an attempt to collect money from Jackson for crack cocaine that Medina had supplied to Jackson to sell, but which Jackson had not paid for. (Tr. 1968-69, 1974) According to the Government, Clark and

Jackson confronted Medina and Estrada in the early morning hours of July 28, 2012 in the vicinity of 718 East 228th Street in the Bronx; gunfire was exchanged, Estrada shot Clark, and Clark died as a result. (Tr. 1968-69)

## DISCUSSION

### I.  LEGAL STANDARD

Under Fed. R. Crim. P. 29, a trial court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

To prove Medina guilty of conspiracy to distribute or possess with intent to distribute marijuana, the Government was required to demonstrate, by proof beyond a reasonable doubt, that (1) in or about 2012, an agreement or understanding between two or more people existed to violate those provisions of the law that make it a crime to distribute marijuana or to possess marijuana with the intent to distribute it, and (2) Medina knowingly became a member of the charged conspiracy during the applicable time period. (Tr. 2147) To prove Medina guilty of violating Section 924(c), the Government was required to demonstrate, by proof beyond a reasonable doubt, that (1) in or about 2012, Medina committed a drug trafficking crime for which he might be prosecuted in a court of the United States – namely, the drug conspiracy charged in Count One – and (2) Medina knowingly used or carried a firearm during and in relation to the commission of, or knowingly possessed a firearm in furtherance of, the narcotics conspiracy, or aided and abetted such use, carrying or possession of a firearm by another. (Tr. 2165)

"In considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the government," and "[a]ll permissible inferences must be drawn in the government's favor." United States v. Guadagna, 183 F.3d 122,

3

129 (2d Cir. 1999). "[U]pon a motion for judgment of acquittal, 'the Court must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" Id. (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir. 1984) (internal quotations omitted)). "The court should not substitute its own determination of the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn for that of the jury." Mariani, 725 F.2d at 865. This is because "the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court." United States v. McDermott, 245 F.3d 133, 137 (2d Cir. 2001). "The Second Circuit has observed that '[t]hese strict rules are necessary to avoid judicial usurpation of the jury function.'" United States v. DiPietro, No. S5 02 Cr. 1237 (SWK), 2005 WL 1863817, at *1 (S.D.N.Y. Aug. 5, 2005) (quoting Mariani, 725 F.2d at 865) (alterations in DiPietro). Given this standard, "[a] defendant bears a 'very heavy burden' in challenging a conviction based on insufficient evidence." United States v. Goldstein, No. S2 01 Cr. 880 (WHP), 2003 WL 1961577, at *1 (S.D.N.Y. Apr. 28, 2003) (quoting United States v. Brewer, 36 F.3d 266, 268 (2d Cir. 1994)).

II.     ANALYSIS

Medina argues that the evidence at trial was insufficient to convict him of any conspiracy to distribute or possess with intent to distribute a controlled substance – whether crack cocaine or marijuana. Medina further argues that because there was insufficient evidence of the charged drug conspiracy, he is entitled to a judgment of acquittal on the Section 924(c) charge.[2] (Def. Br. (Dkt. No. 196) at 2-3)

---

[2] Medina correctly argues that "proof of the narcotics conspiracy . . . is a prerequisite to a finding of guilt on [Count Two]." (Def. Br. (Dkt. No. 196) at 3; see also Jury Charge, Tr. 2164-65 ("You should also be aware that if your verdict on the conspiracy charge in Count One is not

4

The S3 Indictment charges Medina with conspiring with Estrada and John Jones to distribute or possess with intent to distribute controlled substances. (S3 Indictment (Dkt. No. 111) ¶ 2) The S3 Indictment alleges that Medina and co-defendant Estrada had agreed to distribute and possess with intent to distribute cocaine base and marijuana (id. ¶ 3); while co-defendant Jones had agreed to distribute and possess with intent to distribute only cocaine base. (Id. ¶ 4) Medina argues that – in light of Jones's testimony that he did not meet Estrada until July 28, 2012, and that he rejected Medina's offer to sell drugs with him and Estrada at that time – there was insufficient evidence to conclude "that all three of the individuals named in the Indictment were confederates in a single conspiracy." (Def. Br. (Dkt. No. 196) at 2 (citing Tr. 132-34))

Such a showing was not required for conviction, however. To prove that the conspiracy charged in the S3 Indictment existed, the Government was required to prove beyond a reasonable doubt

> [f]irst, . . . that there was, in fact, an agreement or understanding in or about 2012 between two or more persons to violate those provisions of the law that make it a crime to distribute cocaine base and marijuana or to possess these substances with intent to distribute them[, and s]econd, . . . that Mr. Medina knowingly became a member of the conspiracy; that is, that he knowingly associated himself with the conspiracy to distribute cocaine base or marijuana, or to possess these substances with the intent to distribute them.

(Tr. 2147)

Viewing the evidence at trial in the light most favorable to the Government, a reasonable jury could have found – beyond a reasonable doubt – that an agreement existed between Medina and Estrada to distribute or possess with intent to distribute marijuana in the

---

guilty, you will not be asked to make a determination as to Counts Two and Three. In other words, if your verdict on Count One is not guilty, your deliberations are at an end. The verdict form that you will receive when you begin your deliberations reflects this procedure."))

vicinity of East 228th Street and White Plains Road in the Bronx in 2012. Ivette Rodriguez – Medina's girlfriend at the time of the July 28, 2012 shootings – testified that in 2012 Medina and Estrada sold marijuana together in the area of East 228th Street and White Plains Road, where she lived. (Tr. 1534-35, 1538-40) According to Rodriguez, Medina introduced Estrada to her as "his right-hand man." (Tr. 1538) She further testified that other individuals – "Chris and his brother" – sold marijuana for Medina as well. (Tr. 1540-41, 1692) Rodriguez also testified that when the police searched her apartment on July 28, 2012 – where Medina had spent the night – Rodriguez observed five "dime" bags of marijuana under her bed. At Medina's direction, Rodriguez later gave this marijuana to "Baby" – an associate of Medina. (Tr. 1568, 1620-21, 1655-56, 1777-78)

Rodriguez's testimony was corroborated by her neighbor, Michael Medina. Michael Medina testified that Estrada and Robert Medina sold marijuana on East 228th Street in 2012. (Tr. 1413-18) Estrada introduced Robert Medina to Michael Medina, telling Michael Medina that he could buy marijuana from Robert Medina. (Tr. 1414-15) Estrada described Robert Medina as his "right hand." (Tr. 1415) Michael Medina testified that he did, in fact, buy marijuana from both Estrada and Robert Medina on several occasions, and that he sold marijuana with Estrada on one occasion. (Tr. 1415-16) Estrada and Robert Medina also packaged marijuana in Michael Medina's apartment on two occasions. (Tr. 1417-18)

Another Government witness – Andrew Petrie – similarly testified that he observed Estrada and Medina selling marijuana together on East 228th Street in 2012. (Tr. 1359-60, 1362) Petrie also testified that "Chris" sold marijuana for Medina at that time. (Tr. 1246)

6

In sum, there was ample evidence at trial that in 2012 Medina and Estrada were engaged in a conspiracy to distribute marijuana or possess marijuana with the intent to distribute it, in the vicinity of East 228th Street and White Plains Road in the Bronx.

To the extent that Medina argues that the Government was required to demonstrate at trial that all three individuals named in the S3 Indictment – Medina, Estrada, and Jones – conspired to distribute, or possess with intent to distribute, marijuana (Def. Br. (Dkt. No. 196) at 2), that argument is mistaken. Although the S3 Indictment charges a controlled substance conspiracy involving crack cocaine and marijuana, the indictment goes on to allege that Medina and Estrada were involved in distributing both crack cocaine and marijuana, while Jones was only involved in distributing crack cocaine. Accordingly, the Government did not charge that Jones was involved in distributing marijuana.

Even if the Government had charged that Jones was involved in distributing marijuana, however, and the jury concluded that the marijuana conspiracy consisted solely of Medina and Estrada, that conclusion would not entitle Medina to a judgment of acquittal on the conspiracy charge. It was not necessary for the Government to prove that Jones joined the conspiracy as well in order for the jury to find that the charged conspiracy existed and that Medina knowingly participated in it. See United States v. Kelly, 892 F.2d 255, 259 (3d Cir. 1989) ("The government need only prove that the defendant agreed with at least one of the persons named in the indictment that they or one of them would perform an unlawful act. Failing to prove that all named co-conspirators conspired with the defendant is not fatal to the government's case." (citing United States v. Nolan, 718 F.2d 589, 595 (3d Cir. 1983) ("[T]he Government need prove only that appellant conspired with at least one of the persons named in the indictment; failure to prove that all named co-conspirators conspired with appellant

throughout the period alleged is not fatal to the Government's case and is not in itself prejudicial to appellant.")); United States v. Desimone, 119 F.3d 217, 222-24 (2d Cir. 1997) (finding that where the indictment named defendant Fernandez and two other individuals in narcotics conspiracy count, and Fernandez challenged sufficiency of evidence as to agreement between himself and "either" named co-conspirator, "the agreement between Esa [– one of the two named co-conspirators –] and Fernandez is sufficient to affirm Fernandez'[s] conspiracy conviction"); see also United States v. Levine, 569 F.2d 1175, 1178 (1st Cir. 1978) ("We must conclude that the jury found that Levine did knowingly enter a conspiracy with at least one other person to distribute cocaine. . . . [T]here is sufficient evidence to permit that finding.  We see no reason to believe that the jury did not make that finding solely on the basis of permissible evidence and concentrating on no individual other than appellant.  The jury acquitted appellant's co-defendant at trial.  Because appellant was the only person convicted of conspiracy by this jury, the most that appellant can claim is that individuals were included in the indictment . . . whom the evidence showed were not part of the conspiracy of which appellant was convicted."); cf. United States v. Cohen, 427 F.3d 164, 171-72 (2d Cir. 2005) (finding no error in district court's instruction that to find the defendant guilty of conspiracy the jury "must determine whether it has been proven that the defendant was a member of a conspiracy with [his named co-defendant] and/or others who were not acting as agents of law enforcement") (emphasis added); United States v. Agueci, 310 F.2d 817, 824 (2d Cir. 1962) (finding no error in instruction that government was required to prove that "a conspiracy to violate the narcotic laws existed between any one of the defendants on trial and any other defendant, either on trial or not on trial, or any

co-conspirator named in the indictment") (emphasis added).[3]

## CONCLUSION

For the reasons stated above, Medina's motion for a judgment of acquittal is denied. Sentencing will proceed as scheduled on February 2, 2015 at 2:30 p.m.

Dated: New York, New York
       January 20, 2015

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

---

[3] Medina has cited no case holding that the Government must prove that every co-conspirator named in an indictment is, in fact, a co-conspirator in order for a defendant to be found guilty of a charged conspiracy. See Def. Br. (Dkt. No. 196) at 2. The cases Medina relies on involve multi-defendant trials and claims that the Government's evidence proved multiple conspiracies rather than the single conspiracy charged in the indictment. See Kotteakos v. United States, 328 U.S. 750, 755 (1946); United States v. Taylor, 562 F.2d 1345, 1351 (2d Cir. 1977). These cases are not on point. Medina proceeded to trial alone, and the Second Circuit has repeatedly stated that the multiple conspiracies analysis does not apply in such circumstances. See, e.g., United States v. Corey, 566 F.2d 429, 431 n.3 (2d Cir. 1977) (the "single/multiple conspiracy analysis does not apply to the trial of a single defendant"); United States v. Sir Kue Chin, 534 F.2d 1032, 1035 (2d Cir. 1976) (rejecting argument, in single defendant case, that Government had proven multiple conspiracies; "[w]e have been cited to no case which involves only one defendant and where a claim of multiple conspiracies has been sustained"; United States v. Galtieri, 1992 WL 245499, at *3 (S.D.N.Y. Sept. 17, 1992) ("A defendant who stands trial alone is not entitled to a charge on multiple conspiracies."). Moreover, although Medina's requests to charge included a multiple conspiracies instruction, "[i]f [a]pplicable," (Def. Proposed Jury Charge (Dkt. No. 141) at 29), Medina later withdrew his request for such an instruction. See Def. July 21, 2014 Letter (Dkt. No. 190). In any event, Medina's argument here is not that the evidence at trial showed the existence of multiple conspiracies, but rather that he is entitled to a judgment of acquittal because the Government did not demonstrate that all of the defendants named in the S3 Indictment were members of the charged conspiracy. See Def. Br. (Dkt. No. 196) at 2.

9